UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID K.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:22-cv-364

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, David K., brings this action under 42 U.S.C. § 405(g) to seek review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits. Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. The Commissioner has filed a response in opposition to Plaintiff's Statement of Errors, to which Plaintiff has filed no reply. For the reasons explained below, the Commissioner's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

On November 1, 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging he became disabled on December 31, 2009, based upon a combination of anxiety, claustrophobia, Gulf War Syndrome and back pain. (Tr. 476). After being denied benefits initially and on reconsideration, Plaintiff requested a hearing before an

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

Administrative Law Judge ("ALJ"). On January 15, 2019, Plaintiff's counsel appeared before ALJ Thuy-Anh Nguyen, but advised the ALJ that Plaintiff would not be appearing due to his social anxiety issues. (Tr. 139; *see also generally*, Tr. 137-156). On May 22, 2019, the ALJ issued a decision denying Plaintiff's application for benefits, (Tr. 187-199), which Plaintiff appealed. On March 24, 2020, the Appeals Council remanded the case to the ALJ after determining that the May 2019 decision did "not adequately evaluate the claimant's mental residual functional capacity." (Tr. 206).

Upon remand, ALJ Nguyen held a second hearing on November 19, 2020. At that telephonic hearing, Plaintiff and a vocational expert both appeared and testified. (Tr. 89-136). Due to the lack of sufficient time to complete the vocational expert testimony, the ALJ conducted a third supplemental hearing on February 18, 2021. (Tr. 2311- 2332).

On April 21, 2021, the ALJ issued a second adverse decision. (Tr. 16-32). Based upon Plaintiff's earnings history, the ALJ determined that Plaintiff remained insured for purposes of DIB only through September 2017. Plaintiff's date last insured ("DLI") of September 30, 2017 requires him to prove disability prior to that date. (Tr. 18). Plaintiff was 49 years old, which is defined as a "younger individual age 18-49" on his DLI,[2] and has a high school education with one year of college. (Tr. 29; 477). Plaintiff did not engage in substantial gainful activity during the period that his alleged disability began on December 31, 2009 through his DLI. (Tr. 18). Prior to his DLI, Plaintiff engaged in the following relevant work: (1) a composite job of warehouse worker (medium) and delivery driver (light) actually performed at medium exertion; (2) a composite job of automobile salesperson (light) and bill collector (sedentary) actually performed at sedentary; (3)

---

[2]Plaintiff points out that he was 52 years old at the time of the ALJ's decision. However, only Plaintiff's age on his date last insured is relevant.

2

janitor (medium); (4) technical customer service representative (sedentary); (5) scheduler; and (6) competitive shopper.

The ALJ found that Plaintiff has the following severe impairments: anxiety/panic disorder, hypertension, disorders of the spine, obesity, depressive disorder, and a history of obsessive compulsive disorder. (Tr. 18). The ALJ also determined that Plaintiff has nonsevere impairments of "gastroesophageal reflux disease ("GERD"), carpal tunnel syndrome of the left upper extremity, status post left ankle fracture, gastritis, and reactive airway disease." (Tr. 19). However, none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment prior to his DLI. (*Id.*)

Through September 30, 2017, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of work at the light exertional capacity, but further limited as follows:

> The claimant can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He can frequently stoop and crawl. He can perform in a job where changes can be introduced gradually and are explained in advance. There should be advance notice regarding expectations and job duties prior to starting the job.

(Tr. 20-21). Based upon testimony from the vocational expert ("VE"), the ALJ concluded that Plaintiff remained capable of performing three past relevant jobs: "a Technical Customer Support Representative, Scheduler, and Competitive Shopper as generally performed. (Tr. 29). Considering additional VE testimony and Plaintiff's age, education, work experience and RFC, the ALJ determined in the alternative that Plaintiff was able to perform other work that exists in significant numbers in the national economy through September 30, 2017, including the representative jobs of marker, routing clerk or cleaner. (Tr. 30). Consequently, the ALJ concluded that Plaintiff has not been under a disability,

3

as defined in the Social Security Act. (Tr. 31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review.

In this judicial appeal, Plaintiff argues that the ALJ committed reversible error when she failed to give controlling weight to statements in two letters submitted by his treating psychologist: Because most of those statements were outside the defined scope of "medical opinions" to which such deference was due, I find no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

4

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of

impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Medical Evidence Concerning Plaintiff's Mental Impairment

Plaintiff's original DIB application was based upon a combination of physical and mental impairments, including anxiety, claustrophobia, Gulf War Syndrome and back pain. (Tr. 22). But Plaintiff does not challenge the ALJ's assessment of his physical RFC. Instead, his sole claim before this Court is that the ALJ erred in her assessment of statements made in two letters submitted by his treating psychologist. Therefore, the undersigned summarizes only evidence that relates to Plaintiff's mental impairment.

The relevant record includes Plaintiff's own statements about the impact of his mental impairment. Plaintiff reported that

> he had unpredictable anxiety attacks and did not go out in public much. He noted he was able to prepare meals, do house and yard work, drive a car (but only on local roads at certain times of day), shop in stores, pay bills, and manage a bank account.

(*Id*.) He also "stated that he does not like to be around others and does not like being in tall buildings, movies, or restaurants." (*Id*.) And he testified to "panic attacks almost every day, making it hard for him to get things done." (*Id*.) In his function report, Plaintiff stated that he lived at home with his family, was able to help his great uncle in the shower and getting on and off the bus, shopped for food, clothing and household items, and helped out at the Veterans organization once per month. (Tr. 487-488, 490-91).

Notably, the ALJ discounted Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of these symptoms" after finding those statements to be "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22). "[W]hile the claimant has some limitations from his mental

6

impairments, the medical evidence indicates his limitations are not as severe or persistent as alleged." (Tr. 24). An ALJ's assessment of subjective symptoms, including pain complaints, is generally given great deference, *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Plaintiff does not challenge the ALJ's adverse credibility/consistency determination in this case.[3]

> The ALJ's summed up some of the inconsistencies as follows:
>
> Though the claimant complained of symptoms from anxiety and mental conditions and sought treatment for them, the objective findings typically did not support his allegations. While the claimant reported symptoms from anxiety, he had benign mental status exams. At December 2014, February 2015, June 2015, December 2015, May 2016, June 2016, and July 2016 visits with his psychologist, Dr. Monsson, the claimant was alert, oriented, had linear, rational thought, euthymic mood, and fair to good insight and judgment (3F/345, 347, 356, 387, 402, 417, 420). Similarly, at a mental status exam on March 23, 2015, the claimant's psychiatrist, Dr. Lutz, reported that the claimant was doing "pretty well" and described him as having a good attitude and grooming with a euthymic mood and bright affect and normal cognition without any anxiety or compulsions noted (3F/416-417). Similarly, at November 9, 2015, June 6, 2016, visits with Dr. Lutz, the claimant continued to have a good attitude and grooming with a euthymic mood and bright affect and normal cognition without any anxiety or compulsions noted (3F/354-356, 389-390, 416-417).

(Tr. 25-26).

The ALJ also discussed January 2017 records in which Plaintiff reported "that his panic attacks were under fair control with near daily use of Ativan." (Tr. 26). In March 2017 – close to the date of Dr. Monsson's first letter - Plaintiff stated he had improvement in his anxiety level over the prior few months," and "added that he still struggled with anxiety when leaving the house but he wanted to get out more." (*Id.*). The ALJ generally

---

[3] An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

7

found Plaintiff's daily activities to be inconsistent with disability, noting his reports of weightlifting in July 2012, hunting in September 2016, and reports that he was helping take care of his great uncle, taking care of chickens, a goat, a dog, working in the greenhouse, mowing the grass, vacuuming and other chores, and doing more work on the farm. (Tr. 25). In fact, Plaintiff generally reported "staying busy caring for a small farm and [his] parents and his great uncle." (Tr. 26).

Additionally, the ALJ discussed mental health records at Step 3 of the sequential process when she considered whether Plaintiff's mental impairment was of listing level severity. In the course of that determination, the ALJ evaluated Plaintiff's functioning in broad categories known as the "Paragraph B" criteria.[4] The ALJ found "no limitation" in Plaintiff's ability to understand, remember, or apply information, "mild limitation" in Plaintiff's ability to concentrate, persist, or maintain pace, and "moderate limitation" in the functional area of adapting or managing oneself. (Tr. 20-21).

Particularly relevant to the contested statements made by Plaintiff's treating psychologist, the ALJ found only "mild limitation" in the category of interacting with others.

> There is no objective evidence of problems getting along with others during prior employment. Also, the claimant interacted well with his clinicians. In December 2018, Dr. Monsson added that it is also very challenging for the claimant to travel to areas with much traffic and many people, and going to downtown Cincinnati would be detrimental to him and would cause in increase in his symptoms (9F). The claimant did not identify any problems getting along with others though he stated he did not go out much (5E/10). Despite the claimant's subjective reports, mental status exams were typically unremarkable in regards to interaction. For example, in April 2016, May 2016, June 2016, and July 2016, the claimant had euthymic mood and

---

[4]The ALJ's assessment of the Paragraph B criteria closely aligns with the opinions of the agency psychologists. As the ALJ acknowledged, "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 21). While the mental RFC requires a more detailed assessment of functional limitations, the ALJ's evaluation of Plaintiff's ability to interact with others remains relevant to her assessment of Dr. Monsson's general statement that Plaintiff "has severe social anxiety and has difficulties being in social situations." (Tr. 1724).

8

>appropriate speech at mental status exams (1F/6, 5F/147, 148, 159). Similarly, a January 2017 exam noted the claimant with a good attitude (5F/188), but he also reported that he still struggled with anxiety when leaving the house but he wanted to get out more. He was noted to be in a euthymic mood (5F/179). At a February 3, 2017 exam, he had a good attitude and bright affect (5F). At his March 8, 2017 exam, he had appropriate behavior and a euthymic mood (5F/180). Balancing these objective and subjective reports indicates the claimant had a mild limitation in this area.

(Tr. 20). Plaintiff does not challenge the ALJ's Step 3 determination.

In his Statement of Errors, Plaintiff discusses additional mental health records dating to 2018, 2019 and 2020. (Doc. 13 at 5-8, PageID 4706-4709). However, an impairment that develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of DIB. *See Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981) ("Evidence of new developments ... subsequent to the expiration of [a plaintiff's] insured status would not be relevant."). Therefore, the 2018-2020 record are of (at most) limited relevance.

### B. Plaintiff's Claim[5]

### 1. Applicable Regulations and the Treating Physician Rule

The regulatory scheme in effect at the time Plaintiff filed his application set forth a hierarchy of presumptions regarding the weight to be given to differing medical source opinions. Under those regulations, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an

---

[5] Despite this Court having directed Plaintiff's counsel to comply with Local Rule 8.1(d) in prior cases, Mr. Farrell continues to provide this Court only with "PageID" citations (which cannot be easily searched in Social Security cases) rather than citing to the Administrative Transcript ("Tr.").Mr. Farrell is **again** reminded that Local Rule 8.1(d) requires parties in Social Security cases to "provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations."

examination", 20 C.F.R. §§ 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship." *Gayheart v. Comm'r of Soc*. Sec., 710 F.3d 365, 375 (6th Cir. 2013). Another regulation spells out what is commonly known as the treating physician rule: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.927(c)(2); *see also Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p.

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ is required to articulate "good reasons" for that decision. *Id.* Under the "good reasons" standard, an ALJ cannot reject a treating physician's opinion solely based on the conflicting opinions of non-examining consultants. Nor may an ALJ subject a treating physician's opinions to greater scrutiny than the opinions of consulting physicians. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d at 377.

Here, the ALJ gave greater weight to the RFC opinions of the non-examining reviewing psychologists than to opinions and/or statements made by Plaintiff's treating psychologist. That fact is not grounds for reversal because the presumptive hierarchical order of opinion evidence is subject to rebuttal. Thus, "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

10

On the other hand, an ALJ's decision to give the most weight to non-examining consultants will be upheld only if the ALJ complied with regulatory requirements and if the decision is supported by substantial evidence.

### 2. The ALJ's Evaluation of the Medical Opinion Evidence

To determine Plaintiff's mental RFC, the ALJ considered all relevant evidence, including clinical records, Plaintiff's subjective reports, and the following three categories of potential medical opinions (1) the RFC opinions of two non-examining state agency psychologists, Kathleen Malloy, Ph.D. and Sandra Banks, Ph.D.; (2) statements contained in two letters submitted by Plaintiff's treating psychologist, Yngve Monsson, Ph.D.; and (3) Plaintiff's GAF scores. Ultimately, the ALJ assessed Plaintiff with a mental RFC that required "a job where changes can be introduced gradually and are explained in advance," with "advance notice regarding expectations and job duties prior to starting the job." (Tr. 21-22). With that RFC, the ALJ determined that Plaintiff had not met his burden at Step 4 of the sequential analysis to prove that he could no longer perform his past relevant work. The ALJ could have ended her analysis there, but determined in the alternative at Step 5 that, prior to his DLI, Plaintiff also was still able to perform a significant number of jobs in the national economy.

As stated, Plaintiff urges this Court to reverse based upon his contention that the ALJ erred in her evaluation of Dr. Monsson's opinion(s). Plaintiff suggests that if given "controlling weight" under the treating physician rule, the ALJ would have found him to be disabled. Instead, the mental RFC limitations determined by the ALJ were virtually identical to the RFC opinions of two agency psychologists to whom the ALJ afforded "partial weight."

11

> The undersigned gave partial weight to the opinions of Kathleen Malloy, Ph. D., and Sandra Banks, Ph. D. They stated the claimant can perform in a job where changes can be introduced gradually and are explained in advance and there should be advance notice regarding expectations (2A, 4A). These opinions were given partial weight because they came from non-examining sources but were largely consistent with other evidence. The claimant had counseling and medication management with the VA, where he reported panic attacks and that he did not like to be around crowds. However, he was typically noted to be alert, oriented with a euthymic mood, fair to good judgment, and logical, rational thought process without objective findings of social interaction abnormalities during these sessions (3F). At other appointments, the claimant typically had a normal mood and affect (2F/8, 40, 79, 149, 190, 227), though he was noted as anxious on at least one occasion (2F/298). In October 2016, the claimant denied depression (3F/191).

(Tr. 27, citing Tr. 164-65, 175-180).

To evaluate Plaintiff's contention that the ALJ committed reversible error by failing to comply with the treating physician rule, this Court first must determine which statements made by Dr. Monsson qualified as "medical opinions." The regulations define medical opinions as "statements from physicians and psychologists ... that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

The statements that Plaintiff describes as Dr. Monsson's medical opinions are contained in two single-paragraph letters. Dr. Monsson wrote the first letter on March 8, 2017, approximately six months prior to Plaintiff's DLI. In that letter, Dr. Monsson states that he treats Plaintiff and has diagnosed him with Panic Disorder with Agoraphobia. The March 2017 letter next states that Plaintiff is "currently experiencing severe symptoms and he has been unable to maintain employment due to this." (Tr. 1724). The letter concludes with a statement that Plaintiff "has severe social anxiety and has difficulties

being in social situations." (*Id.*) Other than the reference to Plaintiff's "current[]" level of symptoms, the letter does not indicate how long Plaintiff has experienced "severe symptoms" (whether at the outset of the alleged disability period in 2009 or of more recent origin), or whether the symptoms are expected to last for a continuous 12-month period.

More than a year *after* the expiration of Plaintiff's insured status, on December 12, 2018, Dr. Monsson wrote a second letter. (Tr. 2043). That letter largely restates the first, reiterating Plaintiff's diagnosis, and that Plaintiff is "<u>currently</u> experiencing severe symptoms and he has difficulties being in social situations.." with no other reference to any timeframe. (*Id.*. emphasis added).[6] Presumably in support of Plaintiff's failure to appear at a then-upcoming January 2019 hearing before the ALJ, the December 2018 letter opines that it is "very challenging" for Plaintiff to drive "to areas with much traffic and many people," and that driving to "downtown Cincinnati would therefore be detrimental to him and in his current mental state would likely cause increase in symptoms." (*Id.*)

The ALJ began her analysis by acknowledging Dr. Monsson's treating physician status before accurately summarizing the statements contained in the two brief letters:

> Yngve Monsson, Ph. D., treating psychologist at the VA, stated the claimant was diagnosed with Panic Disorder with Agoraphobia. In March 2017, Dr. Monssen stated he was experiencing severe symptoms and had been unable to maintain employment due to this and that he had severe social anxiety and has difficulties being in social situations (4F). In December 2018, Dr. Monsson added that it is also very challenging for the claimant to travel to areas with much traffic and many people, and going to downtown Cincinnati would be detrimental to him and would cause in increase in his symptoms (9F).

(Tr. 27).

---

[6]Because it significantly post-dates Plaintiff's DLI, the second letter is of limited probative value to assessing Plaintiff's disability.

13

Evaluating the wording of the letters, the ALJ identified as a potential "medical opinion" the March 2017 statement that Plaintiff could not "sustain work." However, the ALJ gave that statement "little weight," explaining: "The statement that the claimant was unable to maintain employment due to his mental symptoms was given little weight because the issue as to whether a claimant can work is ultimately left to the Commissioner." (Tr. 27). Plaintiff argues that the ALJ "completely misrepresented what Dr. Monsson said." (Doc. 13 at 12, PageID 4713). He maintains that the referenced statement constitutes a medical opinion that Plaintiff's "severe social interaction limitations" directly caused his inability "to sustain employment." (*Id.*) But the undersigned finds the ALJ's interpretation of the refenced sentence to be both reasonable and substantially supported, and disagrees with Plaintiff's alternative characterization.

Both of Dr. Monsson's letters were conclusory and lacked any explanatory support or references to his clinical records. Unlike a medical opinion concerning the number of hours that a claimant may be able to engage in social interactions in a workday (i.e., occasional, frequent, etc.), or the depth of those social interactions (i.e., "superficial"), a statement about a claimant's ability "to sustain employment" is reasonably construed as an administrative or quasi-legal opinion about the ultimate issue of disability. There is no question that an ALJ may disregard such statements because they are not considered to be medical opinions at all. *See* 20 C.F.R. § 404.1527(e)(1) (for claims filed before March 27, 2017) ("Opinions on some issues… are not medical opinions… but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); *accord*, *Morr v. Comm'r of Soc Sec.*, 616 Fed. Appx. 210, 211-12 (6th Cir.

2015) (holding that the ALJ was not required to give controlling weight to a physician's opinions about the plaintiff's inability to work).

Aside from the questionable relevance of the second letter based upon the fact that it postdates Plaintiff's DLI by more than a year, neither letter contains medical opinions on *any* specific functional limitations. The March 2017 letter states that Plaintiff has "severe social anxiety and …difficulties being in social situations," (Tr. 1724), but offers no specific opinions about Plaintiff's work-related functional limitations other than that vague reference.

On the record presented, the ALJ reasonably determined that referenced vague statement did not constitute a medical opinion regarding Plaintiff's functional limitations. "[T]he rest of the statement[s in the March 2017 letter] did not provide any functional limitations…." (Tr. 27). An ALJ need not give "controlling weight" to a generalized statement that fails to set forth *any* functional limitations. *See, e.g., James v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-570, 2020 WL 836493, at *10 (N.D. Ohio Feb. 20, 2020) ("Because [the doctor] did not offer opinions regarding Plaintiff's functional limitations, the ALJ did not err in failing to assign them specific weight."); *Smith v. Comm'r*, Case No. 3:18-cv-622, 2019 WL 764792 at *7 (N.D. Ohio Feb. 21, 2019) (ALJ reasonably determined that treating physician's opinion was not entitled to controlling weight where "the doctor did not provide a function-by-function analysis demonstrating the inability to perform any type of gainful activity"). Likewise, an opinion that is not well-supported and/or that is inconsistent with other substantial evidence is not entitled to controlling weight. *Id.*; *see also Quisenberry v. Comm'r*, 2018 WL 6264566 at *7 *(6th Cir. Nov. 29, 2014) (upholding rejection of vague opinion that did not propose specific functional

15

limitations); *Allen v. Comm'r*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) (statements about the general relationship between a spinal condition and the limitations it may cause rather than addressing the specific extent of the plaintiff's limitations "appear to be outside the scope of 'medical opinions.'").

To the extent that the statement regarding Plaintiff's "difficulties…in social situations" could be construed as suggesting some type of undefined limitations in social interactions at work, the ALJ reasonably articulated why that "opinion" was not well-supported and was inconsistent with other substantial evidence in the record.

> [L]imitations in interacting with others are not appropriate because they are somewhat inconsistent with other evidence. Though the claimant reported being largely reclusive, he also reported shopping in stores and going to meetings (5E). The claimant had counseling with the VA, where he reported panic attacks and that he did not like to be around crowds. However, he was typically noted to be alert, oriented with a euthymic mood, fair to good judgment, and logical, rational thought process without objective findings of social interaction abnormalities during these sessions (3F). For instance, the claimant had a normal mood and affect (2F/8, 40, 79, 149, 190, 227), though he was noted as anxious on at least one occasion (2F/298). In October 2016, the claimant denied depression (3F/191)

(Tr. 27).

In a final argument urging reversal, Plaintiff complains that the ALJ "simply cherry picked pieces of evidence" to support her conclusions, and failed to sufficiently discuss evidence in which Plaintiff reported more difficulties in grocery shopping and in attending appointments at certain times of day when there might be more traffic.[7] But the argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as

---

[7] All of the allegedly favorable evidence that Plaintiff accuses the ALJ of ignoring dates to 2018-2020 – a time frame that significantly post-dates his September 30, 2017 DLI. (*See* Doc. 13 at 12-13, PageID 4713-4714).

16

weighing the evidence." *White v. Comm'r,* 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Commissioner,* 693 F.3d 709, 713 (6th Cir. 2012).

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** as supported by substantial evidence and that this case be **CLOSED**.

      /s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DAVID K.,                                        Case No. 1:22-cv-364

       Plaintiff,                            Dlott, J.
                                                   Bowman, M.J.
   v.


COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).